IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC., dba MCKAY-DEE HOSPITAL,<br><br>          Plaintiff,<br>v.<br><br>OFFICE OF PERSONNEL MANAGEMENT,<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE DECISION OF THE AGENCY**<br><br>Case No. 2:15-cv-00918-PMW<br><br>Chief Magistrate Judge Paul M. Warner |

Pursuant to 28 U.S.C. § 636(c), the parties consented to have Chief United States Magistrate Judge Paul M. Warner conduct all proceedings in this case, including trial, entry of final judgment, and all post-judgment proceedings.[1] Before the court is Plaintiff IHC Health Services, Inc. dba McKay-Dee Hospital's ("Plaintiff") Motion for Review of Agency Action.[2] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[3]

## BACKGROUND

F.R.G. (the "Patient") is covered by a Federal Employee Health Benefits Act ("FEHBA") health plan through Blue Cross Blue Shield ("Blue Cross").[4] On December 31, 2015, Plaintiff initiated this action, after Blue Cross and the Office of Personnel Management ("OPM" or the "agency") refused to reimburse it for the expenses Plaintiff incurred treating the Patient's

---

[1] Dkt. No. 8.
[2] Dkt. No. 15.
[3] Pursuant to DUCivR 7-1(f), the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.
[4] *See* Dkt. No. 14, Administrative Record ("AR") at 1.

1

frostbite injuries.[5] Plaintiff seeks reimbursement for treating the Patient's acute arterial insufficiency due to frostbite with hyperbaric oxygen treatments ("HBOTs" or "HBOT").

**A. Blue Cross's Policy Definitions and Coverage**

During the injury and subsequent treatment, the Patient was covered by a FEHBA health plan through Blue Cross.[6] Blue Cross's Statement of Benefits provides the following regarding the definition of "medical necessity":

> All benefits are subject to the definitions, limitations, and exclusions in this brochure and are payable only when we determine that the criteria for medical necessity are met. Medical necessity shall mean health care services that a physician, hospital, or other covered professional or facility provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing, or treating an illness, injury, disease, or its symptoms, and that are:
>
> > a. In accordance with generally accepted standards of medical practice in the United States; and
> > b. Clinically appropriate, in terms of type, frequency, extent, site, and duration; and considered effective for the patient's illness, injury, disease, or its symptoms; and
> > c. Not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results for the diagnosis or treatment of that patient's illness, injury, or disease, or its symptoms; and
> > d. Not part of or associated with scholastic education or vocational training of the patient; and
> > e. In the case of inpatient care, only provided safely in the acute inpatient hospital setting.
>
> For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community and physician specialty society recommendations.
>
> **The fact that one of our covered physicians, hospitals, or other professional or facility providers has prescribed, recommended, or approved a service or**

---

[5] Dkt. No. 2.
[6] AR at 1.

>  **supply does not, in itself, make it medically necessary or covered under this Plan**.[7]

Additionally, on September 13, 2012, Blue Cross issued a policy statement regarding the use of HBOT.[8] Blue Cross's policy statement concluded that HBOT is not medically necessary for the treatment of "acute arterial peripheral insufficiency."[9]

**B. Injury and Medical Care**

On December 22, 2012, the Patient suffered frostbite while hunting.[10] On December 23, 2012, the Patient was treated at Uintah Basin Medical Center where he was diagnosed with "[m]oderate frostbite to the right index finger, right middle finger, right ring finger, right little finger, left index finger, left middle finger, left ring finger, and left little finger."[11]

After treatment at the Uintah Basin Medical Center, the Patient was treated at McKay-Dee Hospital.[12] When the Patient was discharged, the Patient was informed that he had frostbite and that the "cold can injure deeper tissues such as blood vessels."[13] Subsequently, the Patient received treatment from the McKay-Dee Hospital Wound Clinic.[14] The Wound Clinic determined that the Patient was being seen for wounds due to "frostbite."[15] The Wound Clinic determined that the patient should undergo HBOTs to treat "acute arterial insufficiency due to cold exposure."[16] From January 7, 2013, until February 28, 2013, the Patient received eighteen HBOTs costing a total of $39,423.84.[17]

---

[7] AR at 766 (emphasis in original).
[8] AR at 783.
[9] AR at 786–87.
[10] AR at 149, 164, 348.
[11] AR at 351.
[12] AR at 149.
[13] AR at 169.
[14] AR at 130.
[15] *Id.*
[16] AR at 132.
[17] AR at 21.

**C. Denial of Coverage and Subsequent Agency Review**

Plaintiff submitted a claim to Blue Cross for the full amount of the Patient's HBOTs.[18] Blue Cross denied coverage, determining that HBOT is not medically necessary for the treatment of frostbite.[19] On January 8, 2014, after the Patient assigned his rights under his FEHBA plan, Plaintiff asked Blue Cross to reconsider its decision.[20]

Upon reconsideration, Blue Cross submitted Plaintiff's claim to an independent board-certified physician to review whether the Patient's HBOTs were medically necessary.[21] The independent physician determined that the Patient's HBOTs did not meet Blue Cross's policy definition of medical necessity.[22] The physician concluded that while there is some scientific literature supporting the use of HBOT to treat frostbite, "many consider this treatment to be unproven."[23] Additionally, the physician noted:

> [s]everal potential but unproven treatments for frostbite have been reported. [HBOT] has been proposed as adjunctive therapy to improve revascularization and healing of injured tissue. Older studies showed no benefit, but subsequent case reports suggest a possible role and describe improvement of symptoms and the microcirculation of affected tissues. Further study of [HBOT] is needed before it can be recommended. There is insufficient evidence in the published literature to establish the use of [HBOT] for frostbite; therefore, this treatment is not [in] accordance with generally accepted standards of medical practice.[24]

Based on the physician's opinion, Blue Cross denied Plaintiff's request for reconsideration.[25]

Subsequently, Plaintiff filed an appeal with the OPM.[26] In response, the OPM asked Dr. Michael J. Wheatley, MD, an independent board-certified physician in hand surgery, to review

---

[18] *Id.*
[19] AR at 309–11.
[20] AR at 295, 299.
[21] AR at 276.
[22] *Id.*
[23] *Id.*
[24] AR at 276–77.
[25] *Id.*
[26] AR at 281.

4

Plaintiff's claim and determine if HBOT met Blue Cross's definition of medical necessity.[27] Dr. Wheatley reviewed the Plaintiff's diagnosis of arterial insufficiency due to frostbite and concluded that the use of HBOT did not meet Blue Cross's definition of medical necessity.[28] On June 16, 2014, relying on Dr. Wheatley's assessment, the OPM affirmed Blue Cross's denial of benefits.[29]

## STANDARDS OF REVIEW

Pursuant to the FEHBA, the OPM is empowered to enter into contracts with insurance carriers to provide health benefits to federal employees. *See* 5 U.S.C. § 8902(a). If an insurance carrier denies an employee health coverage, the covered employee may ask the carrier to reconsider its denial of coverage. 5 C.F.R. § 890.105(a). If the carrier affirms its denial, the covered employee is entitled to ask the OPM to review the claim. *Id.* If the OPM affirms the carrier's decision, the employee is permitted to seek judicial review of the OPM's final decision denying health benefits. 5 C.F.R. § 890.107(c).

The court reviews a final decision of the OPM pursuant to the FEHBA under the Administrative Procedure Act ("APA"). *Porta v. United States Office of Pers. Mgmt.*, 580 F. App'x 636, 639 (10th Cir. 2014). Under § 706(2)(A) of the APA, the court reviews an agency action to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The party challenging an agency action bears the heavy burden of proving that it was arbitrary and capricious. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) ("A presumption of validity attaches to the agency action and the burden of proof rests with [plaintiffs] who challenge such action."

---

[27] AR at 2.
[28] AR at 2, 4.
[29] AR at 1.

(quoting *Colo. Health Care Ass'n v. Colo. Dep't of Soc. Serv.*, 842 F.2d 1158, 1164 (10th Cir. 1988)).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Nevertheless, "the agency must examine the relevant data and articulate a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Furthermore, the court is entitled to rely on the OPM's "experience and expertise" in interpreting health plan contracts as long as the OPM's interpretation is not arbitrary and capricious.  *See Weight Loss Healthcare Centers of Am., Inc. v. Office of Pers. Mgmt.*, 655 F.3d 1202, 1207 (10th Cir. 2011).  Additionally, the OPM is entitled to "rely on their own experts so long as their decisions are not arbitrary and capricious." *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1036 (10th Cir. 2001) (quotations and citations omitted).

## DISCUSSION

The issue before the court is whether the OPM acted arbitrarily and capriciously by refusing to make Blue Cross pay for the Patient's HBOTs.  For the reasons that follow, the decision of the agency is affirmed.  The purpose of judicial review of an agency action is not to second-guess the wisdom of the agency.  Here, the record supports the OPM's decision that HBOT is not medically necessary for the treatment of frostbite within the meaning Blue Cross's health plan.  Accordingly, Plaintiff has not provided the court grounds to reverse the decision of the agency.

Plaintiff argues that the OPM's decision was arbitrary and capricious because the OPM's independent physician concluded HBOT was not medically necessary for the treatment of frostbite. However, Plaintiff contends that the Patient's diagnosis was acute arterial insufficiency, not frostbite. Therefore, Plaintiff argues that the OPM was required to determine HBOT is not medical necessary for the treatment of acute arterial insufficiency according to Blue Cross's health plan.[30] Additionally, Plaintiff takes issue with Dr. Wheatley's disregard for the seventeen case studies showing positive results using HBOT for the treatment of frostbite.[31]

Plaintiff's arguments miss the forest for the trees. In other words, Plaintiff's objections are largely semantic and ignore the reasoning underlying the agency's decision. In the court's view, the OPM's interpretation of Blue Cross's policy is reasonable and supported by the record. To meet Blue Cross's definition of medical necessity, the treatment must be services that a physician, "exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing, or treating an illness, injury, disease, or its symptoms."[32] Further, medically necessary treatments must be in "accordance with generally accepted standards of medical practice in the United States."[33] For purposes of the policy, generally accepted standards of medical practice are "standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community and physician specialty society recommendations."[34]

---

[30] Dkt. No. 15 at 8 ("[A]ll of [the physician's] conclusions were based on the faulty premise that frostbite was the condition which the HBO treatment was provided to treat."); Dkt. No. 19 at 4 ("OPM failed to connect the facts found to the choice made. The action in this case is the denial of payment for HBO treatment for **acute arterial insufficiency**." (emphasis in original)).
[31] Dkt. No. 15 at 11.
[32] AR at 766.
[33] *Id.*
[34] *Id*.

Focusing on the OPM's review, the record demonstrates that the Patient was diagnosed with frostbite.[35] The OPM's expert, Dr. Wheatley, recognized that HBOTs were used to treat the Plaintiff's diagnosis of "acute arterial insufficiency due to cold exposure."[36] The record also demonstrates that Dr. Wheatley offered a reasoned basis for finding that the use of HBOT to treat the Patient did not meet Blue Cross's definition of medical necessity. Dr. Wheatley found that HBOT "is not a generally accepted treatment of frostbite" and there was little data indicating "hyperbaric oxygen is clinically appropriate for frostbite."[37] Specifically, Dr. Wheatley reviewed the Undersea and Hyperbaric Medical Society's indications for HBOT and concluded that frostbite is "not listed as an indication for hyperbaric oxygen."[38] Dr. Wheatley recognized that there are seventeen "case reports" showing the benefit of using HBOT to treat frostbite.[39] Dr. Wheatley concluded, however, that seventeen case reports did not provide enough evidence "to support a treatment as a 'generally accepted standard of medical practice,' especially in view of the Undersea and Hyperbaric Medical Society [sic.] policies that do not list frostbite as an indication for [HBOT]."[40]

Applying the arbitrary and capricious standard, the court finds no basis to reverse the decision of the agency. Contrary to Plaintiff's irrelevant nitpicking, Dr. Wheatley recognized that Plaintiff's Wound Clinic used HBOTs to treat the Patient's diagnosis of acute arterial deficiency that resulted from frostbite.[41] Moreover, Dr. Wheatley reasonably concluded that seventeen case studies are not sufficient to place HBOT in the realm of generally accepted practices for treating frostbite. Unlike clinical trials, Dr. Wheatley could reasonably conclude

---

[35] AR at 149, 164, 348.
[36] AR at 2.
[37] AR at 4.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

that positive results in only seventeen case studies is not sufficient to show HBOT is "generally recognized in the relevant medical community."[42]  Moreover, Dr. Wheatley's conclusion is bolstered by the fact that the seventeen case studies are contrary to the Undersea and Hyperbaric Medical Society's policies for the use of HBOT.

In short, the OPM has articulated a satisfactory explanation for determining the use of HBOT to treat frostbite does not meet Blue Cross's definition of medical necessity.  Therefore, the decision of the agency is affirmed.

## CONCLUSION

Based on the foregoing, the OPM's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED this 6th Day of February, 2017.

BY THE COURT:

_____
PAUL M. WARNER
Chief United States Magistrate Judge

---

[42] AR at 766.